**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-25566-ALTMAN**

**YAMER PEREZ PEREZ**,

*Petitioner*,

*v.*

**GARRETT RIPA**, *et al.*,

*Respondents*.
_______________________________________/

**ORDER**

Our Petitioner, Yamer Perez Perez, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his ongoing immigration detention by the Respondents. *See* Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. The Petition is fully briefed and ripe for adjudication. *See* Response in Opposition to the Petition (the "Response") [ECF No. 4]; Reply in Support of the Petition (the "Reply") [ECF No. 6]. After careful review, we **GRANT in part** the Petition.

**BACKGROUND**

Perez Perez is a Cuban national who was "ordered removed to Cuba on August 18, 2000," after serving a 52-month term of imprisonment for "Conspiracy to Possess with the Intent to Distribute Cocaine, under 21 U.S.C. § 841 (a)(1)[.]" Petition ¶¶ 26, 23. Perez Perez's removal order was never appealed, "making the order final." Response at 2 (citing Respondent's Composite Exhibit

A ("Composite Ex. A") [ECF No. 4-1] at 6–7). Perez Perez was released from his initial immigration custody on December 21, 2000, on an Order of Supervision ("OSUP"). *See* Petition ¶ 3.[1]

On June 2, 2026, Perez Perez "was fishing on his commercial fishing vessel [which] was boarded by the Coast Guard." Petition ¶ 35. The Coast Guard detained Perez Perez and transferred him to the custody of Immigration and Customs Enforcement ("ICE"). *See ibid.* Perez Perez filed his Petition shortly thereafter, on June 25, 2026. *See generally* Docket. On July 14, 2026, after more than a month of detention, ICE served Perez Perez with a Notice of Revocation of Release and conducted an informal interview that same day. *See* Composite Ex. A at 9–11; Reply at 4 ("ICE did not serve a written revocation notice or conduct the initial informal interview until July 14, 2026—the same day Respondents filed their Opposition.").

## THE LAW

Section 2241 allows district courts to grant relief to petitioners who are held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This jurisdiction extends to petitioners challenging their detention under our immigration laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## ANALYSIS

The Petition asserts eight counts, seven of which are premised on Perez Perez's allegation that the Respondents' revocation of his OSUP was unlawful. *See* Petition ¶ 77 (as to Count I, alleging that, "[b]ecause Respondents had no legitimate, non-punitive objective in revoking Petitioner's order of supervision, Petitioner's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution"); *id.* ¶ 88 (as to Count II, alleging that "revoking Petitioner's order of supervision without providing notice and a meaningful opportunity to respond violated procedural

[1] On July 22, 2013, Perez Perez was again convicted of a drug offense—"Manufacture of Schedule VI drug, to wit: Marijuana Plants, in violation of TCA § 39-17-417(g)(3)"—and sentenced to a term of supervised release. *Id.* ¶ 27.

due process under the Fifth Amendment to the U.S. Constitution"); *id.* ¶ 93 (as to Count III, alleging that "[t]he revocation should be held unlawful and set aside because it was contrary to the agency's constitutional power and not in accordance with the INA and implementing regulations"); *id.* ¶ 114 (as to Count IV, alleging that the "Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious and should be held unlawful and set aside"); *id.* ¶ 121 (as to Count V, alleging that the "Respondents' revocation of Petitioner's order of supervision was based on ultra vires regulations. So, it was in excess of statutory authority and should be held unlawful and set aside"); *id.* ¶ 123 (as to Count VI, alleging that the "Petitioner has a non-statutory right of action to declare unlawful, set aside, and enjoin Respondents' ultra vires actions"); *id.* ¶ 127 (as to Count VII, alleging that, "[u]nder *Accardi*, Respondents' revocation of the order of supervision and decision to ignore instructions in the release notification should be set aside for violating agency procedures, rules, or instructions"); *id.* ¶¶ 128–43 (as to Count VIII, alleging that the Respondents' "indefinite" detention of Perez Perez violates the Supreme Court's holding in *Zadvydas*). Perez Perez also argues that the Respondents didn't give him adequate "notice of the reasons for revocation and opportunity to be heard" and that the revocation was therefore "not in accordance with the INA and implementing regulations." *Id.* ¶¶ 100-101.

ICE may revoke an alien's OSUP "in the exercise of discretion when, in the opinion of the revoking official: . . . (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]" 8 C.F.R. § 241.4(l)(2). "Upon revocation," ICE must notify an alien "of the reasons for revocation" and afford him "an initial informal interview *promptly* after his or her return to [ ] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1) (emphasis added); *see also* U.S. Immigr. & Customs Enf't, *Detention and Removal Operations Policy and Procedure Manual* ch. 17, §17.12(b) (March 27, 2006), https://www.ice.gov/doclib/foia/dro_policy_memos/09684drofieldpolicymanual.pdf (stating that,

upon revocation of an alien's release under an OSUP, "[t]he alien is to be *promptly* served with the Notice of Revocation of Release to indicate the reason for the revocation. In addition, an informal interview with the alien is to be conducted to afford the alien the opportunity to respond to the reasons for the revocation" (emphasis added)).

In our case, ICE failed to comply with § 241.4(l)(1)'s promptness requirement by waiting more than a month after Perez Perez's re-detention to serve him with a notice of revocation. *See* Composite Ex. A at 9–11. ICE detained Perez Perez on June 2, 2026, *see* Response at 2, but didn't serve him with the notice or give him an informal interview until July 14, 2026, *see* Composite Ex. A at 9–11, by which time he had already filed his Petition. "The failure to provide [Perez Perez] with notice of revocation '[u]pon revocation' and an informal interview 'promptly' after his re-detention violates ICE's own regulations." *Rodas Pedro v. U.S. Immigr. & Customs Enf't*, 2026 WL 2559176, at *1 (M.D. Fla. Aug. 31, 2026) (Pratt, J.) (quoting 8 C.F.R. § 241.4(l)(1) and finding that ICE violated its own regulations because it failed to serve notice of revocation on the petitioner and provide him with an informal interview until almost two months after his re-detention); *see also Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1256 (S.D. Fla. 2025) (Ruiz, J.) ("The failure to provide Petitioner with an informal interview *promptly* after his detention . . . violates [ ] ICE's own regulations[.]" (emphasis added)).

The Respondents argue that "ICE's failure to provide the revocation immediately and conduct the interview promptly after Petitioner's return to custody did not violate the Petitioner's due process rights" for two reasons. Response at 7. *First*, it says that "ICE was not required by the Constitution to adopt the regulation at 8 C.F.R. § 241.4(l)(2)." *Ibid. Second*, it contends that § 241.4(l)(2) "does not require an informal interview where there is not a violation of conditions of release alleged." *Ibid.* Both arguments fail. For one thing, while the Constitution may not require ICE to adopt the provisions of § 241.4(l)(2), ICE *must* follow its own regulations and any procedural requirements imposed by federal law. *See Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979) ("We think *Accardi* stands for

the unremarkable proposition that an agency must abide by its own regulations.");[2] *Romano-Murphy v. Comm'r*, 816 F.3d 707, 720 (11th Cir. 2016) (noting that "executive agencies must comply with the procedural requirements imposed by statute" and "must respect their own procedural rules and regulations" (quoting *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000))). For another, "courts have 'interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation'—meaning that the notice and informal interview requirement stated in § 241.4(1)(1) applies to revocation under § 241.4(1)(2)." *Grigorian*, 824 F. Supp. at 1252 (collecting cases); *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., statement respecting the Court's disposition of the application) (observing that, under 8 C.F.R. § 241.4(l), "in order to revoke conditional release the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification'"); *Maryanovsky v. Ripa*, 2026 WL 496778, at *3–4 (M.D. Fla. Feb. 23, 2026) (Howard, J.) (finding that the procedural requirements of § 241.4(l)(1) apply to revocation of an alien's OSUP pursuant to § 241.4(l)(2)).

Because ICE didn't follow its own regulations, his re-detention violated the strictures of 8 C.F.R. § 241.4(l), and he's entitled to release.[3] *See Rodas Pedro*, 2026 WL 2559176, at *2 (ordering release after finding that the petitioner's "re-detention without notice upon revocation and the *prompt* informal interview required by ICE regulations [was] unlawful"); *Fuentes v. Ripa*, 2026 WL 717982, at *3-4 & n.5 (M.D. Fla. Mar. 16, 2026) (Howard, J.) (ordering release after finding that ICE failed to comply

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] While "not every agency misstep will compel reversal of agency action, much less release of someone in custody," courts "are not so forgiving when the violation 'implicates basic due process rights.'" *Grigorian*, 824 F. Supp. at 1255 (first citing *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013); and then quoting *Alabama Hosp. Ass'n v. Beasley*, 702 F.2d 955, 958 n. 6 (11th Cir. 1983)).

with its regulations in revoking the petitioner's OSUP). We therefore need not address Perez Perez's remaining claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED** as to Count Seven. The Respondents shall release Perez Perez **within 24 hours of this Order**. The Petition is otherwise **DENIED without prejudice as moot**.
2. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on October 26, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov